**John DOUGLAS, Plaintiff,**

v.

**Raymond J. DONOVAN, Secretary of Labor, Defendant.**

**No. CA 80–2968.**

United States District Court,
District of Columbia.

Jan. 18, 1982.

William B. Barton, Harry J. Lambeth, Washington, D. C., for plaintiff.

John H. E. Bayly, Jr., Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

Plaintiff seeks a declaratory judgment and permanent injunction which would prohibit the defendant, the Secretary of Labor * from honoring a garnishment made against benefits paid to him pursuant to the provisions of the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101 *et seq.* Plaintiff contends that FECA benefits are not subject to garnishment under 42 U.S.C. § 659.

The case is now before the Court on plaintiff's motion for summary judgment and defendant's motion to dismiss.

I

Briefly, the underlying facts in this case are as follows: The plaintiff is a citizen of the United States and currently resides in Thailand. He served with the United

---

\* Raymond J. Donovan, the present Secretary of Labor is substituted for Ray Marshall, former Secretary of Labor, pursuant to Fed.R.Civ.P. 25(d).

States Army from January 12, 1942 to February 26, 1946, and thereafter as a civilian employee for the government. He became a full time officer for the Agency for International Development (AID) and was assigned to various AID missions in Africa, Europe and South East Asia. In 1973, the plaintiff was assigned to the AID mission in Vientiane, Laos. On March 29, 1973, while in the course of his employment as Assistant Government Service Officer (Housing Management), he was brutally attacked by Laotian civilian employees with clubs and lead pipes. He was immediately hospitalized and his condition was diagnosed as multiple scalp lacerations, brain contusion, mild contusion of the head, abrasions of the arms, torso and buttocks.

In April 1973, the plaintiff's treating physician recommended follow-up neurological testing in Beirut, Lebanon, and plaintiff's final mission in Amman, Jordan. Thereafter, plaintiff was hospitalized for several weeks and had surgery. He received further treatment in the United States in November 1973 for evaluation of hypercholesterolemia, diabetes, kidney stones, and other ailments.

The plaintiff retired in December 1973 on an annuity from the United States Civil Service. He requested work related compensation benefits under the FECA for his injuries of March 29, 1973. In April 1975 he was informed that his compensation claim had been approved. The approval was for "multiple scalp lacerations, contusion of the head, mild brain contusion, contusion of the arms, torso and buttocks, concussion syndrome and traumatic neurosis" and he was further informed that payments would include "compensation for actual wage loss sustained as a result of those conditions and medical treatment for the effects of disability". Since he was receiving disability payments under the Civil Service Retirement Act, he was required to make an election of benefits.

The plaintiff informed the Office of Workers' Compensation Program that he elected to receive benefits under the FECA which then amounted to $1,739.50 per month, plus medical benefits, rather than his Civil Service benefits which amounted to $957.00 per month, without medical benefits for his injuries or actual wage loss capacity impairment. At the time his FECA claim was approved, he had accumulated compensation benefits retroactively to December 1973 in the amount of $35,705.11. The Civil Service benefits he had received in the amount of $17,568.00 were deducted from the above amount, resulting in a lump sum payment for retroactive compensation benefits in the amount of $18,137.11.

Plaintiff has continued to receive treatment and has been hospitalized from time to time. At the time this action was filed, plaintiff was in a hospital in Bangkok suffering from a nervous breakdown. He had previously suffered a nervous breakdown in 1975.

The plaintiff was married to Huguette Douglas and they have five children. They divorced in 1969 pursuant to a decree entered in the District Court of Iowa, in and for Woodbury County (No. 89477 Equity). Under the terms of a stipulation entered into between the plaintiff and his wife, she received custody of the children and he was required to pay alimony in the amount of $500 per month and child support of $50 per month per child. Mrs. Douglas also received title to real estate located in Paris and Cannes, France, and in Tangier. She also received the family automobile and all personal property and furnishings. Compl. Ex. 3.

It appears that plaintiff failed to make his full alimony and child support payments. His former wife received a judgment and requested a writ of attachment or garnishment against his FECA benefits in 1977. At that time the Department of Labor (DOL) refused to honor the garnishment, taking the position that the FECA benefits were subject to garnishment only to the extent that such benefits are garnishable to satisfy alimony and child support payments in the state whose court issued the garnishment order. Subsequently, in June 1980, Mrs. Douglas updated her claim and again attempted to attach a por-

tion of plaintiff's FECA payments. DOL, in an apparent change of position, honored the garnishment. Her judgment amounted to over $19,000. $1,504 per month was garnished for past alimony and child support leaving plaintiff with $1,231 per month for his own support and maintenance. In this connection, it is noted that plaintiff has contended that at times he may have sent payments directly to his children and his wife, however, that information is not reflected in the court records. Notwithstanding the above, or the somewhat confused breakdown of the judgment in excess of $19,000, it seems clear that plaintiff is presently indebted for alimony and child support payments.

Pending final disposition of this case, the Court required the defendant to deposit the disputed payment into the Registry of this Court in the amount of $1,504 per month.

## II

The plaintiff, in his motion for summary judgment, has asked the Court to decide several issues. First, he asks the Court to determine whether FECA benefits are subject to garnishment and whether it was the intent of Congress to permit garnishment of compensation benefits for delinquent alimony and child support payments. Second, he asks that the Court determine whether the Iowa statutes specifically and expressly exempt compensation payments for creditors. Third, he argues that it is inconsistent with due process to allow the garnishment of 55 percent of his FECA benefit when the Consumer Credit Protection Act (CCPA), specifically 15 U.S.C. §§ 1671–1677, prohibits garnishment of any amount which exceeds 25 percent of a wage earner's income and where the Iowa statute purportedly incorporates the provisions of the CCPA. Fourth, he argues that the allowable limit for garnishment under the Iowa law is not more than $250 per year for each individual creditor. Fifth, he seeks to challenge the $19,000 plus judgment which is the basis for the garnishment.

As to the last four points, the Court concludes that it need not address those issues

since it seems clear that the benefits under the FECA are not subject to garnishment. The Court also notes that the information before it is insufficient for the Court to address those issues in any event. For example, it is still unknown how the Iowa court calculated the arrearages for alimony and child support. Moreover, there is no breakdown for alimony and child support in the Iowa judgment. Additionally, it appears that plaintiff has been less than diligent in pursuing his rights in the Iowa court and that any challenge to the amount of the judgment for past alimony and child support should be made there and not in this court.

When plaintiff's position changed he could have petitioned the Iowa court to modify his support payments. If plaintiff made any payments directly to his wife or his children he could have brought that matter to the attention of the Iowa court. It appears however that, rather than pursuing his remedies in that court, he simply chose to assume that, regardless of any order or garnishment issued by that court, his funds were not subject to garnishment under the FECA. However, this Court need not address those issues since it concludes that the FECA benefits are not subject to garnishment.

## III

■■ It is quite clear that the sovereign may only be sued to the extent that Congress has expressly and specifically waived sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). This also means that absent a waiver of sovereign immunity, a creditor cannot prevail in a garnishment proceeding against the government. *Schlaefer v. Schlaefer*, 71 App.D.C. 350, 356, 112 F.2d 177, 183 (1940); *McGrew v. McGrew*, 59 App.D.C. 230, 233, 38 F.2d 541, 544 (1930).

■ Congress enacted 42 U.S.C. § 659 to provide that "moneys (the entitlement to which is based upon remuneration for em-

ployment) due from, or payable by the United States ... shall be subject ... to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments". This section served as a limited waiver of sovereign immunity. 42 U.S.C. § 659(a). *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 599, n. 4, 99 S.Ct. 802, 817, n. 4, 59 L.Ed.2d 1 (1979) (Stewart, J. dissenting); S.Rep.No. 93–1356, 93d Cong., 2d Sess., *reprinted in*, [1974] U.S. Code Cong. & Admin.News 8133, 8157. Congress has further provided that:

> (f) Entitlement of an individual to any money shall be deemed to be 'based upon remuneration for employment', if such money consists of—
>
> (1) compensation paid or payable for personal services of such individual, whether such compensation is denominated as wages, salary, commission, bonus, pay, or otherwise, and includes but is not limited to, severance pay, sick pay, and incentive pay, but does not include awards for making suggestions, or
>
> (2) periodic benefits (including a periodic benefit as defined in section 428(h)(3) of this title) or other payments to such individual under the insurance system established by subchapter II of this chapter or any other system or fund established by the United States (as defined in subsection (a) of this section) which provides for the payment of pensions, retirement or retired pay, annuities, dependents or survivors' benefits, or similar amounts payable on account of personal services performed by himself or any other individual (not including any payment as compensation for death under any Federal program, any payment under any Federal program established to provide 'black lung' benefits, any payment by the Veterans' Administration as pension, or any payments by the Veterans' Administration as compensation for a service-connected disability or death, except any compensation paid by the Veterans' Administration to a former

member of the Armed Forces who is in receipt of retired or retainer pay if such former member has waived a portion of his retired pay in order to receive such compensation), and does not consist of amounts paid, by way of reimbursement or otherwise, to such individual by his employer to defray expenses incurred by such individual in carrying out duties associated with his employment.

42 U.S.C. § 662(f).

Plaintiff contends that benefits received under the FECA are not "based upon remuneration for employment" and hence are not subject to attachment or garnishment under 42 U.S.C. § 659. Although he cites little case authority, or for that matter, legislative history to support his contention, he argues that the general intent of Congress is evident from a reading of the FECA, 5 U.S.C. § 8130, which provides that "[c]ompensation and claims for compensation are exempt from claims of creditors". He also cites the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, as containing a similar prohibition against assignment. *See* 33 U.S.C. § 916.

The defendant cites no case authority to support his contention that FECA benefits are subject to attachment and garnishment under 42 U.S.C. § 659. However, defendant places heavy reliance on the comments of Senator Nunn in which he stated that "Moneys, the entitlement to which is based on remuneration from employment" would include "the retirement and disability systems established for employees of the Foreign Service ... the Federal program for compensation for work injuries of federal employees (but not death benefits thereunder)". 123 Cong.Rec. S 12,913 (daily ed. May 23, 1977).

Plaintiff has cited two cases which support his argument, *Harris v. Harris*, 40 N.C. App. 26, 252 S.E.2d 95, (1979) and *Elmwood v. Elmwood*, 295 N.C. 168, 244 S.E.2d 668 (1978). In *Elmwood*, the Court noted that its attention had been directed to "no feder-

al court decision dealing specifically" with the issue, however, the court concluded that disability payments were not "remuneration for employment and, therefore the United States is not subject to state garnishment proceedings on account of such payment under 42 U.S.C. § 659". 244 S.E.2d at 675.

The Court in its research has found only one reference to a federal case which specifically addressed the issue, *Murray v. Murray*, decided by the United States District Court for the Middle District of Georgia, however, that case is unreported and was subsequently reversed on other grounds. *Murray v. Murray*, 621 F.2d 103 (5th Cir. 1980). The District Court in that case had ruled that Veterans Administration disability benefits were not subject to garnishment under 42 U.S.C. § 659. The Court of Appeals found that the case had been improperly removed from the state court and that the federal court lacked jurisdiction. 621 F.2d at 107–108. That case differs from the instant case in that here the plaintiff has brought suit against a federal official while in *Murray* the government was only involved as a garnishee. Thus it appears, that two courts, one state and one federal, which considered the issue, concluded that compensation benefits were not subject to garnishment under 42 U.S.C. § 659.

## IV

■ This case presents a very close question. The statute, 42 U.S.C. § 662(f), which defines what is meant by "based upon remuneration for employment" makes no reference to disability payments in stating what is meant by "compensation" and it does not appear that the absence of such language was an oversight. Certainly, based upon the comments of Senator Nunn quoted above, Congress had given consideration to the matter of disability payments and could easily have made reference to such items such as FECA benefits if that had been their intention. They did not do so although they carefully spelled out other items which are included in the term "compensation" such as severance pay and sick pay. 42 U.S.C. § 662(f)(1). Thus, this Court is satisfied that FECA benefits do not fall within the definition contained in Section 662(f)(1).

Congress also provided that the language "based upon remuneration for employment" would include certain "periodic benefits". *See* 42 U.S.C. § 662(f)(2). There again, Congress specifically referred to certain types of periodic benefits including pensions, retirement or retired pay, annuities and dependent and survivors benefits but excluded such items as "black lung benefits" and payments by the Veterans Administration "as compensation for a service connected disability or death". *Id.*

Obviously, the waiver of sovereign immunity contained in 42 U.S.C. § 659 is a limited one and must be strictly construed. Congress could easily have included FECA benefits within the definitions contained in Section 662(f) but for whatever reason, chose not to do so. This Court can only conclude that their failure to do so was deliberate and not an oversight, especially keeping in mind the recognition of Senator Nunn that that was an issue before the Congress. For the Court to expand upon the definition as defendant seeks, to include FECA benefits, would be to go beyond the plain language of the statute. Congress has specifically noted those types of compensation and periodic payments over which it has waived sovereign immunity for the limited purposes provided in Section 659. Absent therefrom is any reference to FECA benefits.

Since the issue is one of sovereign immunity, any intent to waive that immunity should be clear on the face of the statute itself, and in the absence of such a direct statement, the Court is led to conclude that a waiver was not intended.

For the above reasons, the Court concludes that FECA benefits are not subject to attachment or garnishment under 42 U.S.C. § 659 and accordingly, plaintiff is now entitled to summary judgment.

An appropriate order has issued.