John DOUGLAS

v.

Raymond J. DONOVAN, Secretary of Labor, Appellant.

No. 82–1248.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1983.

Decided April 12, 1983.

Rehearing Denied June 27, 1983.

Regina C. McGranery, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence, Michael J. Ryan and John H.E. Bayly, Jr., Asst. U.S. Attys., Washington, D.C., were on brief, for appellant.

William B. Barton, Washington, D.C., with whom Harry J. Lambeth, Washington, D.C., was on brief, for appellee.

Before WILKEY, WALD and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

In this appeal, the Department of Labor (DOL or Department) seeks to overturn an order of the district court that enjoined its Office of Workers' Compensation Programs from honoring a writ of garnishment against disability benefits paid to the appellee, John Douglas. *See Douglas v. Donovan*, 534 F.Supp. 191 (D.D.C.1982). Since the date of that order, however, Douglas and his former wife have settled the alimony and child support dispute underlying the present lawsuit. Thus, the case has become moot and we vacate the order and accompanying decision of the district court. Because the DOL insists that the case is not moot, and because we are disturbed by the failure of the parties to inform this court about the settlement reached between Douglas and his ex-wife, we fully explain the basis of our decision.

## I. BACKGROUND

John Douglas was employed by the federal government beginning in 1942, eventually becoming an administrative officer at the Agency for International Development. On assignment in Laos in 1973, Douglas was savagely beaten and severely injured, forcing him to retire from active service. Soon thereafter, he began receiving payments under the civil service retirement system; at the same time, he applied for work-related disability benefits under the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101–8193 (1976 & Supp. V 1981). This latter disability claim was approved in April 1975, and because the resulting benefits were more generous than the amount of his retirement annuity, Douglas elected to receive FECA benefits instead of retirement pay. Those benefits continue to this day, and are the subject of the disputed garnishment.

Meanwhile, Douglas was divorced from his wife pursuant to a decree granted by an Iowa court in 1969. Under the terms of a stipulation entered into at that time, Douglas agreed to pay his ex-wife $500 per month in alimony and $50 per month in child support for each of five minor children. By 1977, Douglas was in arrears with his alimony and child support payments, causing his former wife to seek part of the FECA disability benefits he regularly received from the government. After overcoming some preliminary obstacles, Mrs. Douglas obtained a facially valid writ of garnishment for over $19,000, issued by an Iowa state court on July 1, 1980 and served on the Department of Labor just nine days later. In accordance with the federal garnishment statute, 42 U.S.C. §§ 659, 661–662 (Supp. IV 1980), and applicable regulations, 5 C.F.R. §§ 581.101–.501 (1982), the DOL notified Douglas of the garnishment and began to withhold $1504 per month from his disability benefits.

Douglas then filed this action in district court, requesting injunctive and declaratory relief to prohibit the Department from hon-

oring the writ of garnishment. Specifically, Douglas claimed, *inter alia,* that FECA benefits are not subject to garnishment under 42 U.S.C. § 659(a) because they are not "moneys (the entitlement to which is based upon remuneration for employment)" as defined in section 662(f). Pending final disposition of the case, on January 7, 1981 the district court initially ordered that all payments withheld by the Department pursuant to the writ of garnishment be forwarded to the clerk of the district court for temporary deposit in the court's registry. Record Documents (RD) 9. Almost one year later, by order of December 31, 1981, the court granted Douglas' motion for summary judgment, holding that FECA benefits could not be subject to garnishment under the federal statute and ordering that the monies deposited with the clerk's office be turned over to Douglas. RD 18; *see Douglas v. Donovan,* 534 F.Supp. 191 (D.D.C.1982) (opinion filed January 18, 1982 to explain order of December 31). Thus, at least implicitly, the court's order of December 31 rescinded its first order of January 7 that had otherwise provided for those funds.

Despite his victory in the district court, Douglas remained in dire financial need. Moreover, the DOL moved for an immediate stay of the court's order pending appeal, thereby making it unlikely that Douglas actually would receive his money in the immediate future. While contemplating this potential delay, Douglas and his ex-wife were able to reach an out-of-court settlement of their dispute on February 18, 1982, just four weeks after the district court had filed its opinion in this case. Under their agreement, $10,000 from the monies already collected in the registry of the district court would be turned over to Mrs. Douglas; the remainder of those funds would be allocated to Mr. Douglas, who would thereafter designate $400 per month from his FECA benefits for his former wife. The settlement also provided that its terms "shall prevail and not be challenged by either party regardless of the outcome" of an appeal from the order filed on December 31, 1981. RD 27, Exhibit A.

In response to this settlement, a joint motion was filed by Douglas and the DOL asking the district court to amend its previous orders so as to incorporate the terms of the agreement. But the apparently dispositive nature of the settlement was called into question by some unusual language in the joint motion. Specifically, the motion papers indicated that,

> were the Court to grant this motion, the position, or issues to be advanced by either party, on appeal would not thereby be affected. John A. Douglas and Huguette M. Douglas have additionally agreed elsewhere that they will not seek to challenge or to alter either the representations set forth herein or the terms of the relief granted by the Court in response to this joint motion, regardless of the parties' success *vel non* on appeal or whether an appeal is ultimately prosecuted by either or both parties.

RD 27. Moreover, for some unknown reason, the motion requested that the district court amend its January 7, 1981 order rather than its later, and presumably superseding, order of December 31.

Reflecting this confusing state of affairs, on March 4, 1982 the district court not only ordered that the monies in the court's registry be allocated in accordance with the settlement reached, but also noted that the agreement had an "absence of effect on the prospective position of the parties on appeal." RD 28. At least to the extent that this order incorporated the disbursement of funds agreed to by Douglas and his ex-wife, it must be read to supersede the contrary orders of January 7 and December 31. Nonetheless, the DOL filed its notice of appeal from these earlier orders on the very next day, apparently eager to challenge the statutory interpretation that was included in the published opinion of the district court that accompanied the order of December 31.

## II. Mootness

There can be little doubt but that the agreement reached between Douglas and his former wife to settle their alimony and

child support dispute also mooted the present case. The Supreme Court has recognized that a case may become moot when two conditions are satisfied. *County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). A court must first conclude "with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur"; then, it must be clear to the court that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* at 631, 99 S.Ct. at 1383 (citations omitted); *Doe v. Harris,* 696 F.2d 109, 111 (D.C.Cir.1982).

■ Both of these criteria for mootness have been met in the present case. First, under the district court's order of March 4 incorporating the settlement agreement, Mrs. Douglas has already received her $10,000 from the registry of the court and will continue to receive her $400 per month directly from the DOL. *See* RD 28–29. It is virtually impossible, therefore, for Douglas to fall behind in his payments, and thus equally unlikely that the alleged statutory violation will recur.

Second, it is clear that intervening events—*i.e.,* the reaching of the settlement agreement and its approval by the district court—have completely eliminated any effects caused by the allegedly illegal garnishment. In fact, Douglas has neither filed a damages action nor contested a possible finding of mootness by the court. At this point, his only professed interest in the litigation is to preserve the agreement he reached with his ex-wife.

Despite the obvious fact that both conditions for mootness outlined in *Davis* have been met, the Department insists this case is not moot because its adherence to the writ of garnishment issued by the Iowa court is still required by statute. That writ of garnishment, however, was essentially dissolved when the underlying dispute was settled by the parties. Indeed, even if the writ somehow continues to exist in the abstract, Mrs. Douglas would be precluded from enforcing it because she has entered into the settlement agreement. Nor does

the Department's reliance on an order of the Iowa courts issued on May 11, 1982 change the status of the writ of garnishment. That order, although noting that the 1969 divorce decree remains in full force and effect, says nothing about the continuing validity of the writ of garnishment. *See* Supplemental Brief for Appellee, Exhibit D. Thus, given the comprehensive settlement reached between Douglas and his ex-wife, any controversy involving the writ of garnishment first issued in July 1980 is now moot.

## III. FAILURE TO INFORM THE COURT

Despite the preemptive effect that the settlement agreement has had on the present litigation, counsel for neither Douglas nor the DOL properly informed this court of its existence. In the original briefs filed before this court, for example, there is barely any mention of the settlement agreement. Douglas' brief completely ignores the settlement, probably because of ignorance about its substantive effect on the litigation. The DOL's brief mentions it in passing only twice, once as a mere citation in a footnote whose primary focus is the property settlement reached in 1969, and once in the text, at which point it is termed a property settlement that will survive the litigation. Even worse, the settlement came to the attention of the court only accidentally at oral argument when Douglas' counsel was about to conclude his statement. Until that last-minute reference, neither party mentioned the settlement agreement during thirty minutes of oral argument.

■ As officers of this court, counsel have an obligation to ensure that the tribunal is aware of significant events that may bear directly on the outcome of litigation. *See, e.g.,* MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC 7–20 (1981) ("our adjudicative process requires an informed, impartial tribunal capable of administering justice promptly and efficiently"). This is especially true for government attorneys, who have special responsibilities to both this court and the public at large. *See, e.g.,* MODEL

Code of Professional Responsibility EC 7–14 (1981) ("[a] government lawyer in a civil action . . . has the responsibility to seek justice and to develop a full and fair record"). As Chief Justice Burger has admonished in a similar situation:

> It is disconcerting to this Court to learn of relevant and important developments in a case after the entire Court has come to the Bench to hear arguments.
>
> . . . [T]he Court should have been explicitly advised that changes had occurred. The only reference to changes in the law actually gives the impression that their effect is negligible.
>
> This Court must rely on counsel to present issues fully and fairly, and counsel have a continuing duty to inform the Court of any development which may conceivably affect an outcome.

*Fusari v. Steinberg,* 419 U.S. 379, 390–91, 95 S.Ct. 533, 540, 42 L.Ed.2d 521 (1975) (Burger, C.J., concurring). Such duties of counsel are not lessened when they are challenging a legal determination by the lower court which they believe to be erroneous. It is one thing to argue that a settlement does not moot a particular case; it is quite another to promote an advisory opinion by disguising a settlement in order to hide it from the court's consideration.

### CONCLUSION

Given the settlement agreement reached between Douglas and his former wife, and its adoption by the district court in its order of March 4, 1982, the present appeal has become moot. The established practice of the federal appellate courts in such a situation is to vacate the judgment and decision below and remand with directions to dismiss. *United States v. Munsingwear,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). Thus, the district court orders of January 7, 1981 and December 31, 1981, as well as the opinion that accompanied the latter order, 534 F.Supp. at 191, are hereby vacated. No remand is necessary, however, because the district court order of March 4 which accommodated the settlement has not been subject to this appeal and remains in full force and effect.

 The DOL understandably is concerned about the statutory issue addressed by the district court decision from which this appeal was taken. But however tempting it may be for this court to offer its own interpretation of the statute, it is preferable and indeed necessary in our adversary system that judicial decisions be limited to cases involving live disputes. The DOL presumably will have its chance in a future case or controversy to argue for its preferred interpretation of the federal garnishment statute.

*It is so ordered.*