Eric A. FORETICH, Appellant,

v.

AMERICAN BROADCASTING COMPANIES, INC., et al., Appellees.

Nos. 99–7010 to 7013.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1999.

Decided Dec. 28, 1999.

Elaine J. Mittleman argued the cause for the appellant.

Paul R. Taskier argued the cause for the appellees. Adam Proujansky was on brief for the appellees.

Before: SENTELLE, HENDERSON and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Eric A. Foretich, D.D.S., M.A., (Foretich) appeals the district court's order denying his motion for extension of time to file a notice of appeal. He also challenges that court's assertion of jurisdiction over, and resolution of, a subsequent motion of the appellees (collectively "ABC")[1] requesting enforcement of a settlement agreement. Foretich seeks reversal of the order denying his motion for extension of time to file a notice of appeal and requests that this court vacate the district court's order enforcing the settlement for lack of jurisdiction or, in the alternative, reverse the order. We conclude that the court below had jurisdiction to entertain the motion to enforce the settlement agreement, which the court properly granted. The terms of the settlement agreement render moot Foretich's challenge to the order denying him an extension of time to file a notice of appeal. Accordingly, we affirm the district court in all respects.

## I.

In December 1993 Foretich brought a defamation action against ABC for the broadcast of a television movie that depicted events surrounding Foretich's court

---

1. The appellees include American Broadcasting Companies, Inc., Capital Cities/ABC, Inc. and ABC Holding Company.

battles with his former wife regarding the custody of their daughter. Following innumerable discovery disputes, the district court granted ABC's motion for summary judgment on all counts in an order entered on October 22, 1997. Foretich did not file a timely notice of appeal. ABC, however, filed a motion seeking to recover attorney's fees and certain expenses on October 31 and submitted a supplemental bill of costs on November 4.

Also on October 31, settlement negotiations began anew at the behest of Foretich's lawyer. Eventually, by letter dated November 17, Foretich's counsel communicated the following:

> This is to confirm our telephone conversation this afternoon that Dr. Foretich accepts the "walk away" offer made to him in your letter of November 12, 1997, which offer you agreed to keep open today.... In reliance on your acceptance [sic] of the offer, we have not filed today on behalf of Dr. Foretich a Notice of Appeal.

Joint Appendix (JA) 367. The "walk away" offer reflected in the November 12 letter demanded, *inter alia*, that Foretich forego an appeal and "execute a full, general release, from the beginning of time to the end of time, for any person or entity involved in any way with the ... broadcast ... of the docudrama, including a covenant not to sue." JA 359–60. In return, ABC agreed to abandon its effort to recover costs.

Counsel for ABC sent a document entitled "Agreement and General Release" to counsel for Foretich on November 21. During the following weeks, counsel engaged in several telephone conversations and neither voiced objection to the settlement document as an accurate reflection of the parties' understanding. On December 16, however, counsel for Foretich communicated his client's refusal to sign because Foretich objected to executing a release encompassing future broadcasts of the docudrama. In the end, Foretich disputes the district court's finding that correspondence between counsel led to a meeting of the minds. *See* JA 469. The next day, Foretich filed a motion for extension of time to file a notice of appeal. The 30–day period had expired weeks earlier on November 21. The district court denied the motion in an order entered on January 16, 1998. Foretich filed a notice of appeal of that order on February 11, 1998.

ABC's motion for fees and costs remained pending on December 24, 1997 when ABC filed a motion seeking enforcement of the settlement agreement, imposition of sanctions and expedited consideration. Applying principles of contract law, the district court found the parties had entered into a binding settlement agreement that, with minor exception, the Agreement and General Release embodied.[2] Thus, in its order of July 30, 1998,[3] the court granted in relevant part ABC's motion to enforce the settlement agreement, which included a general release as to future broadcasts. The court also denied ABC's motion for sanctions and, pursuant to the settlement agreement, deemed the motion for costs and fees withdrawn. Additionally, in an order entered January 6, 1999, the court denied Foretich's motion to alter or amend the judgment granting ABC's motion to enforce. On January 22, 1999 Foretich filed a notice

---

2. The district court found overbroad the provision releasing ABC from liability for all actions "relating to any aspect of the Morgan–Foretich controversy and/or its portrayal in the Docudrama (including anything referenced in the litigation.)." JA 467. It concluded that the provision "expands the release into territory not discussed in the letters," *id.,* and that Foretich had not agreed to that particular provision. *See id.*

3. Multiple motions to extend time to file a notice of appeal and a motion to strike one of those motions occupied the district court during the seven-month interim between ABC's filing its motion to enforce and the court's disposition.

of appeal addressed to the order entered on January 6.

## II.

■ This court reviews jurisdictional issues *de novo*. *See Board of Trustees of Hotel & Restaurant Employees Local 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1483 (D.C.Cir.1996). With regard to the district court's order enforcing the settlement, we review factual findings for clear error and legal issues *de novo*. *See generally Serono Lab., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C.Cir.1998).

### A.

■ Before reaching the merits of the district court's order partially granting ABC's motion to enforce the settlement, we must decide whether the district court had jurisdiction to consider it.[4] As Foretich points out, the district court granted summary judgment to ABC in an order entered on October 22, 1997, more than two months before ABC filed the motion at issue. Still pending before the district court when the subject motion was filed, however, was ABC's motion for attorney's fees and costs. ABC contends the district court necessarily had ancillary jurisdiction because resolution of the motion to enforce the settlement agreement was necessary to determine whether the pending motion for fees and costs should be deemed withdrawn.

No jurisdictional foundation inheres in a motion to enforce a settlement agreement that led to an earlier dismissal of the underlying action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The Supreme Court nonetheless acknowledged in *Kokkonen* that if the motion is connected to the dismissed action, the exercise of ancillary jurisdiction over that motion may be proper. The Court mentioned a dismissal order that expressly incorporates the settlement agreement as such a jurisdictional "hook." *See id.* Addressing ancillary jurisdiction more broadly, the Court stated that the doctrine "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* at 378. The Court found that a district court may exercise ancillary jurisdiction either "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent" or "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379.

Here, the district court could not incorporate the settlement agreement into its dismissal order because the agreement was negotiated after the order had been entered. Nevertheless, properly pending before the court when ABC's motion to enforce was filed was its motion for fees and costs. *See Lancaster v. Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir.1998) ("Attorney's fees awards are collateral matters over which the district court retains jurisdiction.") (citing *Garcia v. Burlington Northern R.R. Co.*, 818 F.2d 713, 721 (10th Cir.1987)). If enforced, the settlement agreement would require withdrawal of ABC's motion for fees and costs. *See, e.g.*, JA 286. The motion to enforce, therefore, could moot the motion for fees

---

4. ABC challenges our jurisdiction over Foretich's appeal of the July 30, 1998 order, asserting that Foretich did not designate the order in his notice of appeal and that his subsequent filings do not manifest an intent to appeal the order. Considering that Foretich unquestionably seeks review of the issues that order fully addressed and that he listed the order on his Docketing Statement as an appealed order, JA 591, we conclude that he satisfies the standard enunciated in *Brookens v. White*, 795 F.2d 178, 180–81 (D.C.Cir. 1986), where this court recognized the well-settled rule that a mistake in designating the specific judgment or order appealed from should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the appellant's notice (and subsequent filings) and the opposing party is not misled by the mistake.

and costs and, concordantly, any judgment on that motion. The motions were thus interrelated and resolution of the motion to enforce allowed the court to resolve the motion for fees and costs in a manner that "effectuate[d] its decree[ ]." *Kokkonen,* 511 U.S. at 379, 114 S.Ct. 1673. Accordingly, we conclude the district court had jurisdiction over the motion to enforce the settlement agreement.[5]

## B.

■ On the merits, Foretich argues that the district court erred in its disposition of the motion to enforce the settlement agreement, that is, in finding an agreement existed. At oral argument and in his submissions thereafter, Foretich disputed neither that his counsel had authority to enter into an agreement nor that both parties thought an agreement had, *via* counsel's correspondence, been reached. *See* Decl. of Richard E. Jordan, Esq., October 20, 1999, ¶¶ 9, 12, 13. Foretich does dispute that the parties in fact reached a meeting of the minds on certain material terms. He contends that their different understandings came to light when he read the Agreement and General Release ABC drafted after the parties agreed to the "walk away" offer. *See id.* ¶ 14; *see also* JA 413, ¶ 4. Specifically, Foretich asserts that he never agreed to a release permitting future broadcasts of the docudrama.[6]

The November 17 letter from Foretich's counsel established Foretich's acceptance of the offer made in the November 12 letter from counsel for ABC: "This is to confirm our telephone conversation this afternoon that Dr. Foretich accepts the 'walk away' offer made to him in your

letter of November 12, 1997." JA 367. The November 12 letter provides in part that Foretich is to forego an appeal of the order granting ABC summary judgment and to "execute a full, general release, from the beginning of time to the end of time, for any person or entity involved in any way with the ... broadcast, cablecast,[7] etc. of the docudrama, including a covenant not to sue" while ABC is to abandon its effort to recover costs. JA 359–60. Following the letter from Foretich's counsel, ABC prepared the Agreement and General Release which expressly included "all future sales, licenses, publication, distribution, exploitation, broadcast, cablecast and reproduction of the Docudrama and all versions and all elements thereof." JA 371.

■ General principles of contract law govern our resolution of this issue. *See Gaines v. Continental Mortgage & Inv. Corp.,* 865 F.2d 375, 378 (D.C.Cir.1989) (quoting *Village of Kaktovik v. Watt,* 689 F.2d 222, 230 (D.C.Cir.1982)). Parties may enter into a binding agreement that later is memorialized in a written instrument. *See Anchorage–Hynning & Co. v. Moringiello,* 697 F.2d 356, 363 (D.C.Cir. 1983). In this case, the parties disagree on the extent of the release agreed upon and reflected in the correspondence between counsel. Although it speaks in the broadest temporal terms ("from the beginning of time to the end of time"), the November 12 letter does not expressly include future *broadcasts* in its release provision. Thus, the meaning of the term "full, general release" is not unambiguous, JA 359, and we may use parol evi-

---

**5.** We note that the order at issue simply declares that a valid settlement agreement existed. Our affirmance is likewise limited and we do not reach the closer issue of whether enforcing the settlement agreement with affirmative relief such as a mandatory injunction would have been within the district court's jurisdiction.

**6.** In his reply brief, Foretich argues that the trial court "should have taken evidence to

resolve contested issues of fact." Reply Brief at 13. Even considering this untimely argument, Foretich admitted at oral argument that he did not request a hearing below.

**7.** The docudrama had not previously been cablecast. *See* JA 441. Thus the release contemplated by the November 12 letter necessarily included future airings of the docudrama.

dence, if any exists, to determine its meaning. *See Nofziger Communications, Inc. v. Birks,* 989 F.2d 1227, 1230 (D.C.Cir.1993) ("[W]hen the meaning of a contract provision is facially uncertain, a court may resort to an examination of extrinsic evidence, such as statements, course of conduct, and contemporaneous correspondence, aimed at discerning the intent of the parties.") (quoting *Farmland Indus., Inc. v. Grain Bd. of Iraq,* 904 F.2d 732, 736 (D.C.Cir.1990)). The affidavit of ABC's counsel, which was before the district court, manifests that the parties had a lengthy history of settlement negotiations and proposals, all of which contemplated a release encompassing future broadcasts of the docudrama.[8] *See* JA 334–42. In light of ABC's unwavering insistence upon such a release over the course of settlement discussions, Foretich's reading of the broad language ABC's counsel used in the November 12 letter, so as not to include future broadcasts, is not reasonable. The district court did not err in granting (in relevant part) ABC's motion to enforce the settlement agreement.

### C.

■ The parties' settlement agreement dictates that Foretich "forgo any appeal of the October 16, 1997 Order [entered October 22, 1997] granting summary judgment" to ABC in this action. JA 455. Our conclusion that the district court properly enforced the agreement therefore renders moot Foretich's challenge to the district court's order denying his motion to extend time to file a notice of appeal. *See Doug-*

las v. Donovan, 704 F.2d 1276, 1278–79 (D.C.Cir.1983).

For the foregoing reasons, the district court's order of January 16, 1998 denying Foretich's motion to extend time to file a notice of appeal is vacated as moot, *see United States v. Munsingwear,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), and the district court's July 30, 1998 order granting ABC's motion to enforce the settlement agreement is affirmed.[9]

*So ordered.*

---

8. In opposition to ABC's motion below, Foretich relied on his assertion that he "certainly would never agree to such terms as to permit future broadcasts." JA 413. The record, however, belies his assertion. Nine months earlier Foretich had included such terms in his counter-offer to ABC's offer that he had rejected solely on monetary grounds. *Compare* JA 351 (ABC settlement offer of February 3, 1997), *with* JA 353 (Foretich counter-offer of February 5, 1997).

9. Both parties have filed motions since oral argument: ABC moved to strike Foretich's letter and supporting affidavit filed pursuant to Rules 10(e) and 28(j) and Foretich filed a motion to strike ABC's Reply Memorandum (filed on December 1, 1999). We deny both motions.