# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 9, 2009          Decided November 3, 2009

No. 08-7123

T STREET DEVELOPMENT, LLC,
APPELLANT

v.

DEREJE AND DEREJE, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-00524)

---

*Thomas F. Murphy* argued the cause for appellant. With him on the briefs was *Robert E. Greenberg*.

*Emil Hirsch* argued the cause for appellees. With him on the brief was *Steven A. Pozefsky*.

Before: HENDERSON and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: This case involves a dispute over the purchase of real property in the District of Columbia. Appellant, the buyer, seeks to enforce a settlement agreement it claims the parties reached during the pendency of its suit for specific performance. Finding that the parties had failed to agree to all material terms, the district court denied enforcement of the alleged settlement and then dismissed the buyer's underlying specific performance action. We hold first that contrary to the seller's argument, the district court had jurisdiction to entertain the buyer's enforcement motion. Reviewing for clear error, we then affirm.

**I.**

Appellee Dereje & Dereje ("the seller") owns commercial and residential real estate located at T Street and Florida Avenue, N.W., in the District of Columbia. In October 2004, the seller entered into a written contract to sell the property to Appellant T Street Development ("the buyer") for $925,000. The contract called for the closing to occur by December 22, 2004. When it became clear that neither party could meet that deadline, the parties executed another contract that pushed back the closing date to January 28, 2005. Because the buyer was unable to obtain the necessary financing, however, the settlement did not go forward as planned.

After the January deadline had passed, the parties discussed extending the settlement date. The parties now disagree about whether those discussions culminated in an agreement: the buyer was under the impression that an agreement had been reached and that the closing was slated to occur on February 16, 2005; the seller failed to show up at the closing and returned the buyer's deposit. The buyer then sued the seller in D.C. Superior Court seeking specific performance of the contract, and the seller removed the case on diversity

grounds to the U.S. District Court for the District of Columbia. At around the same time, the buyer filed a lis pendens against the property.

The district court ordered the parties to engage in settlement negotiations before a magistrate judge. On March 14, 2007, the parties appeared before the magistrate judge and announced that they had reached a settlement, which they expected to reduce to writing in the form of a consent order they would submit to the district court. Specifically, the parties agreed that the seller would list and sell the property to a third party, subject to the buyer's right of first refusal.

Two issues, however, were tabled for further negotiation. First, the buyer asserted at the settlement conference that there was still "some work to do on the mechanics" of the first refusal right. Settlement Conference Tr. at 10 (Mar. 14, 2007). Second, anticipating the possibility of a breach, the seller's attorney asserted that enforcement of the settlement agreement by the district court would be the "sole and only remedy, and no further lis pendens will be filed" against the property. *Id.* at 6. The buyer's lawyer protested: "the one thing I want to be able to do is file a lis pendens" in the event of a breach by the seller. *Id.* at 7. Acknowledging this "last-minute glitch," the parties asked for an additional week to hash out the lis pendens issue. *Id.* at 9.

Although the parties subsequently exchanged draft consent orders, they were ultimately unable to agree on the details of the buyer's first refusal right or its remedies in the event of a breach. More than a year after the settlement conference, while the specific performance suit was still pending, the buyer filed a motion asking the district court to enforce the settlement agreement as reflected in the settlement conference transcript.

Ruling from the bench, the district court denied the buyer's enforcement motion, explaining:

> There is no question that there was not agreement on all of the material issues to be decided by the parties. Specifically, there was no agreement on the scope of remedies or any of the important issues about remedies. . . . [R]ight in front of [the] Magistrate Judge . . . there was a disagreement between counsel as to whether a *lis pendens* could or could not be entered or filed by the plaintiff under certain situations.  Obviously that is a matter of great significance. . . . There was no meeting of the minds on all material elements.

Trial Tr. at 6–7 (Sept. 9, 2008).  The district court then proceeded to trial on the buyer's suit to compel the sale of the property pursuant to the original contract (as modified by the alleged oral agreement).  Finding that the parties never orally agreed to extend the settlement date, the district court entered judgment in favor of the seller.  *T St. Dev.*, *LLC v. Dereje & Dereje*, 581 F. Supp. 2d 26, 32–33 (D.D.C. 2008).

The buyer now appeals the district court's denial of its enforcement motion, as well as the court's subsequent dismissal of its specific performance suit.  In response, the seller argues, among other things, that the district court lacked jurisdiction to consider the enforcement motion.

## II.

We begin, as we must, with jurisdiction.  In support of its claim that the district court lacked jurisdiction over the settlement agreement, the seller relies on *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375

(1994). There, the parties settled the underlying diversity action and executed a stipulation of dismissal. Nothing in that stipulation, however, expressly provided that the district court would retain jurisdiction to enforce the settlement. After the district court dismissed the case, the original defendant filed a motion in federal court seeking to enforce the agreement. The Supreme Court held that the district court lacked ancillary jurisdiction to do so because enforcement of the agreement would not serve the purpose of enabling the district court to "protect its proceedings and vindicate its authority." *Id.* at 380. The Court observed, however, that the "situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.* at 381. Absent some independent basis for federal jurisdiction, however, the defendant's only recourse was to enforce the settlement agreement in state court. *Id.* at 382.

Noting that the settlement agreement was never incorporated into a final order, the seller argues that the district court lacked jurisdiction to entertain the enforcement motion in the first place. In pressing this argument, however, the seller overlooks a key distinction between *Kokkonen* and this case. In *Kokkonen*, the district court had already dismissed the underlying suit and was then asked to enforce the settlement agreement. Here, the district court ruled on the buyer's enforcement motion while the specific performance suit was still pending before the court.

This distinction is critical. The rationale underlying *Kokkonen* is that unless the district court retains jurisdiction over the matter, a settlement agreement amounts to nothing

more than a freestanding contract, "part of the consideration for which was dismissal of an earlier federal suit." *Id.* at 381. In that circumstance, the doctrine of ancillary jurisdiction, which "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them," provides no basis for federal jurisdiction over a settlement agreement. *Id.* at 378. Where settlement occurs during litigation, however, enforcing the settlement enables the "court to function successfully, that is, to manage its proceedings"—one of the purposes of ancillary jurisdiction recognized in *Kokkonen. Id.* at 380.

Indeed, we have consistently held that nothing in *Kokkonen* precludes district courts from enforcing settlements that occur during litigation. For example, in *Foretich v. American Broadcasting Cos.*, 198 F.3d 270 (D.C. Cir. 1999), after the district court dismissed Foretich's defamation suit against ABC, ABC filed a motion seeking to recover attorney's fees, the parties negotiated a settlement, and ABC then sought to enforce that agreement while its fees motion remained pending. We held that the district court had jurisdiction over the enforcement motion:

> If enforced, the settlement agreement would require withdrawal of ABC's motion for fees and costs. The motion to enforce, therefore, could moot the motion for fees and costs and, concordantly, any judgment on that motion. The motions were thus interrelated and resolution of the motion to enforce allowed the court to resolve the motion for fees and costs in a manner that "effectuate[d] its decree[]."

*Id.* at 273–74 (citing *Kokkonen*, 511 U.S. at 379) (alterations in original) (record citation omitted).

We reached a similar conclusion in *Bailey v. Potter*, 478 F.3d 409 (D.C. Cir. 2007). There, the district court accepted the parties' settlement agreement but failed to issue a separate order dismissing the plaintiff's claims. Citing *Kokkonen*, the district court concluded that it lacked jurisdiction to enforce the agreement. We disagreed, explaining that "[b]ecause the district court did not issue the appropriate order pursuant to Rule 58(a) dismissing the complaint, it continued to have jurisdiction over [the plaintiff's] case. The district court's reliance on *Kokkonen* was therefore misplaced." *Id.* at 412 (citations omitted).

The inescapable lesson of these cases is this: where, as in *Kokkonen*, a party seeks to enforce a settlement agreement after the district court has dismissed the case, the district court lacks jurisdiction over the agreement unless the court either incorporated the agreement's terms into the dismissal order or expressly retained jurisdiction over the agreement. If, however, a party seeks to enforce a settlement while the underlying suit remains pending, then the district court has jurisdiction to enforce the related settlement. *See Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969) ("It is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it."). Here, the buyer filed its enforcement motion while its underlying lawsuit was pending in district court, and a ruling on that motion could have mooted the buyer's specific performance action. The district court therefore had jurisdiction to decide whether the parties had entered into a binding settlement. We thus turn to the merits of the buyer's appeal, which we can dispose of in short order.

**III.**

The parties agree on our standard of review. With respect to the district court's denial of the buyer's motion to enforce the settlement agreement, we review the court's factual findings for clear error. *Foretich*, 198 F.3d at 273. A finding is clearly erroneous when the appeals court is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (internal quotation marks omitted). Contract law governs settlement agreements, and we apply local law in determining whether a settlement agreement was formed. *Makins v. District of Columbia*, 277 F.3d 544, 546–47 (D.C. Cir. 2002). In the District of Columbia, a valid contract requires "both (1) agreement as to all material terms; and (2) intention of the parties to be bound." *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995) (internal quotation marks omitted).

The district court denied the buyer's enforcement motion because it found that the parties had failed to agree on all material terms at the settlement conference. In particular, the court highlighted the parties' failure to agree on whether the buyer could file a lis pendens against the property in the event of a breach. On appeal, the buyer does not seriously contest the district court's determination that the parties failed to agree on this issue. Rather, the buyer complains that the district court erred in finding that the unresolved lis pendens matter was in fact material because, according to the buyer, "terms defining a party's rights in the event of a breach are not considered material terms." Reply Br. 7.

In support, the buyer cites *Tauber v. Quan*, 938 A.2d 724 (D.C. 2007), in which the D.C. Court of Appeals stated that "even if the parties expected to negotiate over possible default terms, 'the mere fact that a contract, *definite in material*

*respects*, contains some terms which are subject to further negotiation . . . will not bar a decree for specific performance.'" *Id.* at 730–31 (quoting *Hackney v. Morelite Constr.*, 418 A.2d 1062, 1068–69 (D.C. 1980)). Nothing in *Tauber*, however, suggests that terms pertaining to remedies are *always* immaterial. Rather, *Tauber* stands for the unremarkable proposition that failure to reach agreement on default terms will not defeat formation, so long as the contract is "*definite in material respects*." *Id.* It is axiomatic that the parties to a contract are free to decide for themselves what is material and what is not. Indeed, the D.C. Court of Appeals has made clear that materiality is not, as the buyer asserts, preordained, but is instead a factual question that depends on what the parties "deem to be the material elements of their agreement." *Georgetown Entm't Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C. 1985).

Thus, regardless of whether terms defining a party's rights in the event of a breach are typically considered to be material, the key is whether the parties in this case deemed them to be. And the record here makes clear that the parties viewed the resolution of the lis pendens question as essential to any settlement. When the issue arose at the settlement conference before the magistrate judge, the parties sparred about it at length. The buyer's lawyer made clear that "the one thing" that he wanted was to be able to file a lis pendens in the event of a breach, and the parties then requested an additional week to "work out" the dispute. Settlement Tr. at 7, 9. Given this, we can easily understand why the district court found that the parties had failed to reach agreement on a material element.

The buyer makes much of the fact that the seller had initially filed its own enforcement motion, which it then withdrew before the district court could act. In filing that

motion, however, the seller was not seeking to enforce the transcript of the settlement conference. Instead, it asked the court to adopt the proposed consent order that it drafted, an order that would have barred the buyer from filing any lis pendens against the property in the event of a breach— precisely the outcome the seller sought but was unable to obtain at the settlement conference. This post hoc effort by the seller to insert its preferred term into the settlement agreement in no way changes the fact that the parties viewed resolution of the lis pendens issue as essential to agreement. Moreover, the district court took account of the seller's motion: the court acknowledged that the seller had first submitted its own enforcement motion yet it nonetheless concluded that the parties had failed to agree on all material terms at the settlement conference. Trial Tr. at 5–6. We see no clear error in that ruling.

The buyer next contends that even if the settlement agreement was unenforceable, the district court erred in dismissing its specific performance suit. According to the buyer, the "day before the scheduled closing, [the seller's] agent orally agreed to allow [the buyer] to extend closing provided [the buyer] paid $200.00 for each day closing was extended," Appellant's Br. 2–3, and the buyer relied on that agreement to its detriment. *See Landow v. Georgetown-Inland West Corp.*, 454 A.2d 310, 313 n.3 (D.C. 1982) (oral modification to land purchase agreement falls outside the statute of frauds if the purchaser materially changes its position in reliance thereon). Again, we review the court's factual findings for clear error. *Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244, 1249 (D.C. Cir. 2007) ("We accept the factual findings underlying the District Court's contract determination unless they are clearly erroneous.").

The district court's conclusion that the parties never agreed to extend the closing date flows directly from its resolution of the parties' factual dispute over the sequence of the oral negotiations. The court found that in early February 2005—after the parties had failed to close by the January 28 deadline set forth in the contract—the seller offered to extend the closing date. The buyer made a counteroffer, which the seller rejected, and neither party made any subsequent proposals. Accordingly, the court determined that the contract had expired without any agreement to extend the closing date. In reaching this conclusion, the district court expressly credited the testimony of the seller's witness and discredited that of the buyer's witness. Such credibility determinations "are entitled to the greatest deference from this court on appeal," *United States v. Broadie*, 452 F.3d 875, 880 (D.C. Cir. 2006) (internal quotation marks omitted), and the buyer has failed to provide any reason for us to second guess the trial court's decision to credit the seller's version of events. Given this, and given the district court's thorough and careful analysis, we have no basis for upsetting its dismissal of the buyer's specific enforcement action.

For the reasons stated above, we affirm.

*So ordered.*