# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 6, 2005          Decided March 7, 2006

No. 04-7163

KARYNE MESSINA,
APPELLANT

v.

DANIEL S. KRAKOWER AND
SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cv00011)

---

*Sol Z. Rosen* argued the cause and filed the brief for appellant.

*Glenn C. Etelson* argued the cause and filed the brief for appellee,

Before: GARLAND, BROWN, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:   Plaintiff Karyne Messina brought this diversity action charging attorney Daniel Krakower and his law firm, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., with defamation.  The district court concluded that the defendants were protected from liability for defamation by the judicial proceedings privilege and granted summary judgment in their favor.  We affirm.

I

Karyne Messina and Susan Fontana were equal owners and co-presidents of a corporation called Totally Italian.com, Inc. By December 2002, the two had become embroiled in disputes regarding the management of the business.  To assist her in resolving those conflicts, Fontana retained the services of Krakower and his law firm.  Krakower drafted a letter to Messina, outlining Fontana's grievances and proposing a process that would allow one owner to buy out the other.  The letter is the source of Messina's defamation claim against Krakower and the law firm.

In the letter, Krakower advised Messina that he understood "that disputes have arisen between you and [Fontana]," that he had "reviewed these circumstances with [Fontana]," and that he had "serious concerns about the propriety and legality" of Messina's actions.  J.A. 29.  Krakower then enumerated a long list of concerns, including Messina's failure to share information with Fontana and to return Fontana's telephone calls, her lease of the corporation's headquarters and establishment of a corporate bank account without Fontana's consent, and her exertion of unilateral control over the corporation's internet accounts.  "It seems abundantly clear to me," Krakower concluded, "that you cannot continue in business together," and he therefore proposed a detailed process "designed to result in one of you buying out the other at a fair price."  J.A. 31.

Krakower's proposal, he wrote, would "result[] in a win/win scenario, as compared to the inevitable lose/lose scenario that would result if you are unable to resolve this matter and [Fontana] was forced to commence legal proceedings and/or dissolution of the Corporation." J.A. 32. Krakower warned that if Messina were not "willing to deal with [Fontana] reasonably and fairly," Fontana would have to "consider taking appropriate legal action to protect her interest in the corporation." *Id.* "If we do not hear from you (or your attorney if you are represented by one) by close of business on January 13, 2003," he said, "we will assume that you are not interested in resolving this matter amicably, and will proceed accordingly." *Id.* Krakower closed by declaring that "[t]his letter is for settlement purposes only"and "is inadmissible in any legal proceeding." *Id.*

On December 27, 2002, before sending the letter to Messina, Krakower emailed Fontana a draft for her review. He also sent a copy of the email to a businessman named Chaim Kalfon. Earlier that month, Fontana had sent Messina an email "to introduce" Kalfon and to authorize him "to negotiate an amicable settlement for our partnership." J.A. 66. On December 31, 2002, Krakower sent the letter to Messina by Federal Express.

Messina never replied. Instead, she filed suit in the United States District Court for the District of Columbia, charging Krakower and his law firm with defamation. The complaint alleged that Krakower's letter constituted libel per se, because it imputed "unfitness to perform and/or the lack of integrity of performance of the duties of the job that [Messina] was

designated to perform for the business enterprise." Compl. ¶ 5.[1]

On January 31, 2003, Krakower and the law firm filed a motion to dismiss and/or for summary judgment. The defendants contended, inter alia, that they were absolutely protected by the judicial proceedings privilege. Messina opposed the motion and submitted an affidavit, pursuant to Federal Rule of Civil Procedure 56(f), requesting further discovery.

On May 8, 2003, the district court concluded that the defendants were protected from Messina's defamation claim by the judicial proceedings privilege and granted their motion for summary judgment. Thereafter, Messina filed a motion to vacate the judgment pursuant to Federal Rule of Civil Procedure 59(e), which the court denied on June 12, 2003. This appeal followed.

## II

"A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)

---

[1] Messina's complaint also charged Fontana with defamation on the basis of a December 27, 2002 email. The district court subsequently dismissed the counts against Fontana for lack of personal jurisdiction, *see Messina v. Fontana*, No. 03-0011, Mem. Op. at 7 (D.D.C. Aug. 12, 2004), and, at the request of Messina, transferred them to the District of Maryland, *see Messina v. Fontana*, No. 03-0011, Order at 2 (D.D.C. Sept. 3, 2004). The present appeal involves only the claims brought against Krakower and his law firm.

(internal quotation marks omitted). We review the denial of a Rule 59(e) motion "only for abuse of discretion." *Ciralsky v. CIA*, 355 F.3d 661, 672 (D.C. Cir. 2004). As the district court noted, Messina's motion did nothing more than "rel[y] on the same arguments that she originally made." *Messina v. Fontana*, No. 03-0011, Order at 2 (D.D.C. June 12, 2003). Messina cited "no intervening change of law," did "not present[] any new evidence that was not previously available," and "failed to establish an error of law or fact" in the court's original opinion. *Id*. We agree with the district court and therefore find no abuse of discretion in its decision to deny Messina's motion to vacate the judgment.[2]

According to the defendants, that should end this appeal. They note that the notice of appeal that Messina filed in the district court designated only the June 12, 2003 Order denying the Rule 59(e) motion and did not mention the May 8, 2003 Order granting summary judgment. The defendants ignore, however, the Rule 28(a)(1) statement that Messina filed with this court, which specified her intention to appeal from both orders and attached a copy of each. *See* D.C. CIR. R. 28(a)(1)(B) ("Rulings Under Review") (requiring that an appellant's Rule 28(a)(1) statement make "[a]ppropriate references . . . to each ruling at issue in this court, including the date . . . and any official citation"); *see also* D.C. CIR. R. 15(c)(3) (requiring appellants to attach provisional Rule 28(a)(1) statements to their docketing statements).

This circuit adheres to the "rule that a mistake in designating the specific judgment or order appealed from should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the

---

[2]Our conclusion that Messina failed to establish an error -- let alone a clear error -- follows from the discussion in Part III below.

appellant's notice (and subsequent filings) and the opposing party is not misled by the mistake." *Foretich v. ABC*, 198 F.3d 270, 274 n.4 (D.C. Cir. 1999). Messina's Rule 28(a)(1) filing removed any doubt regarding her intent to appeal from the May 8 as well as the June 12 Order, and likewise eliminated any possibility that the defendants could have been misled in that regard. Indeed, at oral argument, the defendants conceded that the Rule 28(a)(1) statement clearly indicated Messina was challenging both orders and that they were not misled. Oral Arg. Tape at 20:39. Accordingly, Messina's challenge to the district court's May 8 grant of summary judgment is properly before us.[3]

## III

We review the district court's grant of summary judgment de novo. *Republican Nat'l Comm. v. Taylor*, 299 F.3d 887, 890 (D.C. Cir. 2002). We will affirm if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

---

[3]*See Schoenbohm v. FCC,* 204 F.3d 243, 245, 246 (D.C. Cir. 2000) (holding that, although the appellant's notice of appeal characterized it "as being from the order denying the petition for reconsideration," his "intent to appeal from the underlying decision . . . [was] fairly inferable from the concise statement of reasons" he filed with the circuit, and thus the appellee could not "claim that any notice defects surprised or misled it") (internal quotation marks omitted)); *Foretich*, 198 F.3d at 274 n.4 (holding that the circuit court had jurisdiction over the plaintiff's appeal from an order, notwithstanding his failure to designate the order in his notice of appeal, because he listed the order on the docketing statement filed with the circuit).

The judicial proceedings privilege, upon which the district court grounded its grant of summary judgment, is well-settled in District of Columbia law. *See Finkelstein, Thompson, & Loughran v. Hemispherx Biopharama, Inc.*, 774 A.2d 332 (D.C. 2001); *McBride v. Pizza Hut, Inc.*, 658 A.2d 205 (D.C. 1995); *Arneja v. Gildar*, 541 A.2d 621 (D.C. 1988); *see also Brown v. Collins*, 402 F.2d 209 (D.C. Cir. 1968).[4]  The District has adopted the version of the privilege found in § 586 of the Restatement of Torts, which states:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

RESTATEMENT (SECOND) OF TORTS § 586 (1977) (RESTATEMENT); *see Finkelstein*, 774 A.2d at 338; *McBride*, 658 A.2d at 207.  Accordingly, for the privilege to apply, "two requirements must be satisfied: (1) the statement must have been made in the course of, or preliminary to a judicial proceeding; and (2) the statement must be related in some way to the underlying proceeding." *Arneja*, 541 A.2d at 623.  If the privilege does apply, it "is absolute rather than qualified:  it

---

[4]In this diversity case, the district court applied the substantive law of the District of Columbia "because Dr. Messina lives and works in the District of Columbia and alleges that she was injured there." *Messina v. Fontana*, 260 F. Supp. 2d 173, 177 (D.D.C. 2003) (citing *Weyrich v. The New Republic, Inc.*, 235 F.3d 617, 623 (D.C. Cir. 2001) (noting that the District uses the governmental interest test in considering choice of law issues for defamation)).  Neither side disputes the application of District law.

'protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity.'" *Finkelstein*, 774 A.2d at 338 (quoting RESTATEMENT § 586 cmt. a). The privilege is "'based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients.'" *Id.*

Messina contends that neither of the privilege's two requirements are satisfied in this case. First, she insists that the allegedly "defamatory communications . . . merely involve a business dispute between two partners in a business that had hardly ripened into litigation." Appellant's Br. 12. But, "[d]espite its name, the judicial proceedings privilege does not protect only statements that are made in the institution of a lawsuit or in the course of litigation." *Finkelstein*, 774 A.2d at 341. Rather, the "privilege extends to some statements that are made prior to the commencement of litigation, for instance, 'in . . . communications preliminary to the proceeding.'" *Id.* (quoting RESTATEMENT § 586 cmt. a). "An actual outbreak of hostilities is not required, so long as litigation is truly under serious consideration." *Finkelstein*, 774 A.2d at 343. In particular, the privilege applies to "written correspondence between parties' counsel concerning threatened lawsuit[s]," *id.* at 341 (citing *McBride*, 658 A.2d at 207-08); "statements relating to threat[s] of litigation," including statements "'analogous to [those] that are often contained in demand letters,'" *id.* (quoting *Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 14 (D.D.C.1990)); and statements made during "'settlement discussions,'" *id.* (quoting *Brown*, 402 F.2d at 213).

Krakower's letter plainly falls within these contours. The letter explained that it was "for settlement purposes," proposed a "win/win scenario," and warned of a "lose/lose scenario" if

settlement failed and Fontana were "forced to commence legal proceedings and/or dissolution of the Corporation." J.A. 32. It described possible causes of action available to Fontana, alleging that Messina's actions "constitute[d] a violation of [her] fiduciary duties" and were "in contravention [of] . . . Delaware corporate law." J.A. 30. Krakower then reiterated the threat of litigation twice more. He warned that if Messina were not "willing to deal with [Fontana] reasonably and fairly," Fontana would have to "consider taking appropriate legal action to protect her interest in the corporation." *Id*. at 32. And he concluded with a more specific warning: "If we do not hear back from you . . . by the close of business on January 13, 2003, we will assume that you are not interested in resolving this matter amicably, and will proceed accordingly." J.A. 32. As the district court determined, it is plain on the face of the letter that it was "'preliminary to a judicial proceeding' in that it was sent for the very purpose of attempting settlement prior to litigation." *Messina v. Fontana*, 260 F. Supp. 2d 173, 178 (D.D.C. 2003) (quoting RESTATEMENT § 586).[5]

Messina also disputes that the second element of the judicial proceedings privilege -- that the allegedly defamatory statement have "some relation to the proceeding" -- is satisfied in this case. This element requires that the defamatory matter have "'some reference to the subject matter of the proposed . . . litigation, although it need not be strictly relevant to any issue involved in it.'" *Finkelstein*, 774 A.2d at 341-42 (quoting RESTATEMENT § 586 cmt. c). The "'communication need not be relevant in the legal sense; the term is very liberally construed.'" *Arneja*, 541

---

[5]*See McBride*, 658 A.2d at 206, 207 (holding that a letter declaring that the recipient's failure to retract charges would leave the sender with "'no alternative but to pursue relief for defamation'" was "a clear, unequivocal threat of a lawsuit," and hence was a "communication[] preliminary to a proposed judicial proceeding").

A.2d at 624 (quoting *Mohler v. Houston*, 356 A.2d 646, 647 (D.C. 1976)).

Messina contends that Krakower's letter fails to satisfy this requirement because it unnecessarily outlined a "whole panoply" of charges that were injurious to Messina's reputation. Oral Arg. Tape at 5:45. But the fact that the letter was defamatory (if it was) cannot determine the applicability of the privilege, since the very purpose of the privilege is to protect against liability for defamation. Nor is the privilege inapplicable because Krakower set forth his charges in great detail. District of Columbia law does not require that a communication merely allude to the nature of the sender's dissatisfaction; the privilege is intended to facilitate candid discussion, not to obscure it. *See Finkelstein*, 774 A.2d at 338; *Conservative Club of Washington*, 738 F. Supp. at 14. Because the statements in the letter defined the nature of the dispute between the parties and suggested the claims that Fontana would bring if Messina did not settle the matter, they were plainly related to the referenced litigation. As the district court concluded, "the Krakower Letter is a straightforward, although strong and direct, letter from counsel alerting the recipient of a potential legal claim and seeking to resolve the claim short of litigation." *Messina*, 260 F. Supp. 2d at 179. As such, it falls well within the category of "settlement" or "demand" letters that the privilege is intended to protect. *Finkelstein*, 774 A.2d at 341.

Messina correctly notes that, as a corollary of the relatedness requirement, the privilege has been "held to be inapplicable" when it is "published to persons not having an interest [in] or connection to the litigation." *Finkelstein*, 774 A.2d at 342 (internal quotation marks omitted). She contends that Chaim Kalfon, to whom Krakower sent an email copy of his letter, was such an uninterested person. But there is no genuine

issue regarding Kalfon's interest in or connection to the prospective proceeding. Fontana introduced Kalfon to Messina as the person authorized "to negotiate an amicable settlement for our partnership," J.A. 66, and -- as the district court observed -- Messina herself identified Kalfon as "'Fontana's proposed mediator for Totally Italian.com, Inc. business matters.'" *Messina*, 260 F. Supp. 2d at 175 (quoting Messina Opp'n at List of Ex.). Because communications to commence settlement discussions are covered by the privilege, Kalfon's acknowledged role in such discussions gave him the requisite interest in or connection to the litigation that was contemplated if the discussions were to fail.

Although Messina disputes the district court's legal conclusion that application of the privilege was appropriate, she does not suggest that there are genuine issues of material fact upon which that conclusion turns. To the contrary, she acknowledges that "[t]he facts of the case are elucidated in the opinion of the [district] court," Appellant's Br. 6, and declares that this "court is invited to review the materials submitted and based upon the case law, can decide if they are absolutely privileged," Appellant's Br. 11. Having accepted the plaintiff's invitation and decided that the letter is absolutely privileged, we conclude that summary judgment in favor of the defendants was appropriate.

IV

Finally, we consider Messina's contention that the district court erred by not granting her request for further discovery under Federal Rule of Civil Procedure 56(f). Rule 56(f) provides that a court "may refuse the application for [summary] judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had," if it "appears from the affidavits of a party opposing the motion that

the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." FED. R. CIV. P. 56(f). We review a district court's refusal to grant a Rule 56(f) request under an abuse of discretion standard. *See Novecon Ltd. v. Bulgarian-American Enter. Fund*, 190 F.3d 556, 570 (D.C. Cir. 1999). A party making a Rule 56(f) request must "state[] concretely" why additional discovery is needed to oppose a motion for summary judgment. *Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989). We will not find an abuse of discretion where the requesting party has offered only a "conclusory assertion without any supporting facts" to justify the proposition that the discovery sought will produce the evidence required. *Byrd v. EPA*, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999); *see Carpenter v. Federal Nat. Mortgage Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999).

Messina's Rule 56(f) affidavit requested an opportunity to depose "the individual defendants and the members of the law firm to ascertain the scope and extent of the dissemination of the defamatory materials." J.A. 43. But the affidavit presented no reason to believe that Krakower's letter was disseminated to any third person other than Kalfon, and at oral argument Messina conceded that she still had no reason to believe there was any such dissemination. Oral Arg. Tape at 2:30-3:25. Under these circumstances, we cannot say that it was an abuse of discretion for the district court to grant the defendants' motion for summary judgment without first permitting Messina to pursue further discovery. *See Byrd*, 174 F.3d at 248 n.8 (finding no abuse where the Rule 56(f) declaration "merely alleged 'there may well be knowledge on the part of EPA employees or undisclosed documents identifying additional contacts between EPA and the peer panel members,'" but provided no facts to support the assertion); *see also Exxon Corp. v. FTC*, 663 F.2d 120, 126 (D.C. Cir. 1980) (finding no abuse in the district

court's denial of the plaintiff's "request for limited discovery on the theory that the [defendant] waived the work product privilege" by an ex parte disclosure, because "the facts supporting the allegation" that there was a disclosure were "insufficient").[6]

V

We conclude that the judicial proceedings privilege protects the defendants from suit for defamation based on Krakower's letter to Messina. We further conclude that the district court did not abuse its discretion in granting summary judgment without allowing additional discovery pursuant to Rule 56(f). Accordingly, the court's grant of summary judgment in favor of the defendants is

*Affirmed*.

---

[6]Messina's brief in this court contains an expanded list of additional evidence that she now asserts she hoped to ascertain by discovery. Appellant's Br. 13. Her failure to include those items in her original Rule 56(f) affidavit, however, deprived the district court of the opportunity to consider them and bars Messina from relying upon them here. *See Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 294 F.3d 148, 154 (D.C. Cir. 2002). In any event, Messina's brief suffers from the same flaw as her affidavit: it contains no support for the proposition that discovery would have produced the evidence she anticipated.