# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 7, 2006        Decided March 20, 2007

No. 05-7187

JOHN FLYNN *ET AL.*,
APPELLANTS

v.

DICK CORPORATION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01718)

———

*Ira R. Mitzner* and *Joseph E. Kolick, Jr.* argued the cause for the appellants.

*Charles F. Walters* and *Jessica R. Hughes* argued the cause for the appellee.

Before: HENDERSON, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The appellants, John Flynn (Flynn) et al., trustees of the Bricklayers & Trowel Trades International Pension Fund (IPF or the Fund),

sued Dick Corporation (Company) under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq*., seeking employee benefit contributions, *id*. § 1145, based on the Company's construction projects in Florida. In response, Dick Corporation challenged its liability under a Florida collective bargaining agreement (CBA), claimed that the requested contributions violated the Labor Management Relations Act (LMRA), 29 U.S.C. § 186, and asserted that the IPF failed to exhaust required arbitration procedures. The district court agreed that no Florida CBA bound the Company and that the requested contributions violated the LMRA, granting summary judgment to Dick Corporation. Thereafter, the IPF filed a motion for reconsideration, which the district court granted in part—recognizing a genuine issue of material fact as to the existence of a valid Florida CBA—but it reaffirmed its conclusion that the contributions violated the LMRA and thus affirmed its grant of summary judgment to the Company. The Fund appeals. We reverse the district court, concluding that the requested contributions are valid under the LMRA, and remand for further proceedings.

## I.

The factual history of this contract dispute is cumbersome but essential to a proper understanding of the issues raised on appeal. In 2002, Dick Corporation, a Pennsylvania-based construction company, became the general contractor on two construction projects in Florida. The Company decided to subcontract the craftwork involved in the Florida projects. Its chosen subcontractors, like all of the subcontractors submitting bids on the two projects, did not employ members of the International Union of Bricklayers and Allied Craftworkers (BAC). In the past, however, the Company had used its own employees to perform the type of work it subcontracted on the

two projects. Its employees were members of local bricklayer unions, including BAC Local 1 of Northern New England, with which the Company had a CBA. Under the CBA, it paid employee benefit contributions into the Fund, thereby entitling its employees to benefits under the Fund. *See* Second Decl. of David F. Stupar, Exs. 3 & 4, *reprinted in* Joint Appendix (JA) at 540, 542.

In December 1989 the Company signed an Independent Agreement (1989 IA) with the local BAC affiliates in eastern Massachusetts, agreeing "to be bound by all the terms and conditions of the effective Collective Bargaining Agreement and any . . . successor agreements." Independent Agreement Between Dick Corp. and Dist. Council of E. Mass. Bricklayers & Allied Craftsmen Local Unions (Dec. 1, 1989) ¶ 1, *reprinted in* JA at 11. The CBA referenced in the 1989 IA was executed in August 1989 (1989 CBA).[1] Similarly, in September 2000, Dick Corporation signed another Independent Agreement (2000

---

[1]As a Pennsylvania corporation, the Company was not a member of the Building Trades Employers' Association of Boston and Eastern Massachusetts, Inc. or the Mason Contractors Association of Massachusetts, Inc., both of which signed the CBAs with the Massachusetts BAC affiliates. *See* Agreement Between the Bricklayers & Allied Craftsmen E. Mass. Dist. Council Local Unions and Building Trades Employers' Ass'n of Boston & E. Mass., Inc. and Mason Contractors Ass'n of Mass., Inc., *reprinted in* JA at 15–69; Agreement Between the Bricklayers & Allied Craftworkers Local #1 Mass. and Building Trades Employers' Ass'n of Boston and E. Mass., Inc. and The Mason Contractors' Ass'n of Mass., Inc., *reprinted in* JA at 76–128. Thus, for Massachusetts construction projects, "Dick Corporation signed the independent agreement in which they agreed to abide by the local CBA then in effect." Appellee's Br. at 3 n.3.

IA), this time with the local BAC affiliate in western Massachusetts. *See* Independent Agreement Between Dick Corporation and Bricklayers & Allied Craftworkers Local 1 Mass., *reprinted in* JA at 71–74. The 2000 IA bound the Company to a CBA executed in 1992 (1992 CBA) and any successor CBA. Eventually, the 1989 CBA referenced in the 1989 IA was succeeded by an August 2002 CBA (August 2002 CBA) with the local BAC affiliate in eastern Massachusetts, while the 2000 CBA tied to the 2000 IA was succeeded by a September 2002 CBA (September 2002 CBA).[2]

Both successor CBAs—the August 2002 CBA and the September 2002 CBA—contain a "traveling contractor's clause," which requires that a signatory employer with "any work [covered by the CBA] to be performed outside of the geographic area" of the CBA and "within the geographic area covered by an Agreement with another affiliate of [the BAC] . . . abide by the full terms and conditions of the Agreement in effect in the job site area." JA 195, § 10; *see also* JA 410, art. I-D. Pursuant to both clauses, the IPF sued the Company for failure to make employee contributions consistent with the terms of a Florida CBA between the local BAC in the area of Dick Corporation's Florida projects and the local employers of BAC members in that area. *See Flynn* v. *Dick Corp.*, 384 F. Supp. 2d 189, 192 (D.D.C. 2005). The Fund claimed that the traveling

---

[2]Before the district court, the Company maintained that it was not a party to the successor CBAs. *See Flynn v. Dick Corp.*, 384 F. Supp. 2d 189, 194–96 (D.D.C. 2005). The district court, however, found that the August 2002 CBA and the September 2002 CBA were valid successor agreements binding Dick Corporation, *see id.*, and the Company does not challenge this conclusion on appeal, *see* Appellee's Br. at 10–43.

contractor's clauses bound Dick Corporation to the Florida CBA and, accordingly, the Fund charged the Company with violating the Florida CBA's subcontracting clause, which prohibits signatory employers from using non-union subcontractors for work performed within the area covered by the Florida CBA. *See* Pls.' Mot. for Summ. J. at 13–14. Dick Corporation, the Fund asserted, was "barred from evading this contribution obligation through the use of non-union subcontractors." *Id*.

Following discovery, the district court granted the Company's motion for summary judgment. *See Dick Corp*., 384 F. Supp. 2d at 203.[3] The district court found that the plain language of the September 2002 CBA's traveling contractor's clause unambiguously bound Dick Corporation to any Florida CBA (between local BAC affiliates and local employers of BAC members) that was in existence in the area—and at the time—of the Company's projects. *Id*. at 196–99. The district court then concluded that there was no valid CBA in existence in Florida obligating Dick Corporation to pay employee benefits into the Fund under a traveling contractor's clause. *Id*. at 199–202. First, the court determined that the document the Fund submitted as the applicable Florida CBA did not constitute an enforceable agreement because it lacked provisions covering wages and contract duration. *Id*. at 200. Instead, the court said, the document constituted only a standard form or draft agreement, "completed and made enforceable only with the addition of an addendum detailing benefit payments and contractual ratification by real parties." *Id*. "By design, therefore, the Florida CBA [was] not an agreement in effect (namely, a legally

---

[3]With the parties' consent, the district court had referred the case to a magistrate judge, *see* Appellants' Br. at 2 n.1, who authored the order in this case, *see Dick Corp*., 384 F. Supp. 2d at 191.

binding agreement), but merely provide[d] a framework for one." *Id*.

In addition, the district court found that the LMRA precluded the contributions the Fund sought. *See id*. at 200–02. First, the skeletal nature of the agreement submitted by the Fund failed to provide the "detailed basis" required for lawful contributions from an employer to a trust fund under section 302(c)(5)(B) of the LMRA. *See id*. at 200–01; 29 U.S.C. § 186(c)(5)(B). The district court also held that the contributions sought by the IPF were not for the "sole and exclusive benefit" of Dick Corporation's employees because the Company's Florida projects were performed entirely by the "subcontractors' ineligible non-union employees" and no Dick Corporation employee was eligible to benefit from any contributions based on the work of subcontractors on the Florida projects. *Dick Corp*., 384 F. Supp. 2d at 201–02. Given the IPF's failure to establish that the requested contributions were for the "sole and exclusive benefit" of the Company's employees, the district court found the contributions prohibited by the LMRA. *Id*. at 202; 29 U.S.C. § 186(c)(5)(A).[4]

The IPF moved for reconsideration, challenging the district court's conclusion that there was no valid CBA in effect in Florida and, in any event, not one that provided a "detailed basis" for Fund contributions at the time of the Company's

---

[4]The district court rejected the Company's assertion that the IPF was procedurally barred from filing suit based on the Florida CBA for failure to exhaust the CBA's required arbitration provision. *See Dick Corp*., 384 F. Supp. 2d at 202. The court reasoned that the IPF could not be bound by any arbitration clause because no enforceable CBA existed in Florida at the time of the Company's projects. *Id*.

Florida projects. *See* Pls.' Mot. for Recons. The district court ultimately agreed with the IPF that it had misconstrued affidavits submitted by the Florida BAC and that the affidavits—and the rate tables from CBA appendices the Fund submitted with them—had in fact contained the required "detailed basis" for Fund contributions along with evidence of an enforceable Florida CBA. *See* Mem. Order on Mot. for Recons., *reprinted in* JA at 664–65. The district court "vacate[d]" its grant of summary judgment to Dick Corporation to the extent it was based on the absence of either an enforceable CBA or a detailed basis for benefit contributions under the LMRA. *See id.* at 665. It nonetheless again granted summary judgment to the Company because the requested contributions were not for the "sole and exclusive benefit" of Dick Corporation's employees as required by the LMRA. *See id.* at 665–66. The IPF now appeals.

## II.

We review the district court's grant of summary judgment *de novo*, *see Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005), applying the same standards as the district court and drawing all inferences from the evidence in favor of the non-movant, *see Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422–23 (D.C. Cir. 2005). We may affirm only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Mylan Labs., Inc. v. Thompson*, 389 F.3d 1272, 1278–79 (D.C. Cir. 2004). We review the district court's ruling on a motion for reconsideration pursuant to Rule 59(e) for abuse of discretion. *See Messina v. Krakower*, 439 F.3d 755, 758–59 (D.C. Cir. 2006). We interpret collective bargaining agreements under federal law, *see, e.g., Walsh v. Schlecht*, 429 U.S. 401, 406–07 (1977) (interpreting CBA subcontractor's clause under "federal law principles"), and

"a question concerning the proper interpretation of the plain language of a contract is a question of law" subject to our *de novo* review, *see Smith*, *Bucklin & Assocs.*, *Inc. v. Sonntag*, 83 F.3d 476, 479 (D.C. Cir. 1996).

The Fund's claim to benefit contributions is based on section 515 of ERISA, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall, *to the extent not inconsistent with law*, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (emphasis added). This provision solves the problem created if an employer defaults on its obligation to fund a multiemployer pension plan, thereby forcing other participating employers to make larger contributions in order to cover the default. *See Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004). Under section 515, an employee benefit plan is analogous to a holder in due course. *See Benson v. Brower's Moving & Storage*, *Inc.*, 907 F.2d 310, 314 (2d Cir. 1990) (Because "benefit plans must be able to rely on the contribution promises of employers . . . Congress placed employee benefit plans in a position . . . analogous to a holder in due course."). Indeed, defenses available to an employer attempting to avoid contributing to a benefit plan are ordinarily limited to claims that the agreement allegedly obligating the employer to pay benefits is either invalid or does not apply to the employer. *See DeVito v. Hempstead China Shop*, *Inc.*, 38 F.3d 651, 653 (2d Cir. 1994).

An agreement obligating an employer to contribute to a pension fund is not valid to the extent that such contribution is

"inconsistent with law." *See* 29 U.S.C. § 1145. For example, "[s]ection 302 of the LMRA generally forbids an employer from contributing money to a labor organization." *Wash. Post v. Wash.-Balt. Newspaper Guild, Local 35*, 787 F.2d 604, 606 (D.C. Cir. 1986) (citing 29 U.S.C. § 186(a)). The general prohibition is subject to nine limited exceptions, *see* 29 U.S.C. § 186(c), and, "[i]f any one of these exceptions applies, the general prohibition of § 302 does not operate," *Wash. Post*, 787 F.2d at 606.

## A. *Effect of Florida CBA*

In general, an employer's obligation to make benefit contributions under section 515 of ERISA arises from a collective bargaining agreement in the geographic area in which the employer's work is performed. Dick Corporation signed no CBA in Florida, where the two relevant construction projects were to be undertaken. The Company instead signed two independent agreements—and, by their operation, two CBAs—in Massachusetts. *See* JA 10–13, 71–74; *Dick Corp.*, 384 F. Supp. 2d at 194–96. Both successor CBAs contain a traveling contractor's clause, which, as noted earlier, requires that a signatory employer with "any work [covered by the CBA] to be performed outside of the geographic area" of the CBA and "within the geographic area covered by an Agreement with another affiliate of [the BAC] . . . abide by the full terms and conditions of the Agreement in effect in the job site area." JA 195.

The Fund reads the traveling contractor's clause in the August 2002 CBA to require the Company to contribute to the

Fund in accordance with the Florida CBA. *See* Appellants' Reply Br. at 13.[5] The clause provides:

> When the Employer has any work specified in . . . this Agreement to be performed outside of the geographic area covered by this Agreement and *within the geographic area covered by an Agreement with another affiliate* of [the BAC], the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the job site area.

JA 195 (emphasis added). Two different district courts have given conflicting interpretations to the "unambiguous" meaning of identical traveling contractor's clauses. *Compare Flynn v. Beeler Barney Assocs. Masonry Contractors, Inc.*, No. 02-1411, 2004 WL 3712630, at *6 (D.D.C. Aug. 10, 2004) (clause unambiguously bound employer to "the terms of [the jobsite]

_____

[5]In contrast, the district court looked to the traveling contractor's clause in the *September* 2002 CBA to bind Dick Corporation. *See Dick Corp.*, 384 F. Supp. 2d at 196, 199. Indeed, the district court suggested in dicta that the August 2002 CBA provision did not bind the Company. *See id.* at 196–99 n.7. Both parties recognize, however, that the September 2002 CBA clause was meant to be identical to the August 2002 CBA clause. *See* Appellee's Br. at 10; Appellants' Reply Br. at 13 & n.14. The wording of the two clauses differs because of a scrivener's error in the September 2002 CBA. *See id.* In fact, the Fund admitted that "the uncorrected language of the [September 2002 CBA] makes no sense." Pls.' Reply Mem. in Support of Mot. for Summ. J. at 4 & n.5; *see* Appellants' Reply Br. at 13. The record before us, then, leads us to conclude that the district court erroneously found that the September—instead of the August—2002 CBA bound the Company to the Florida CBA. *See Dick Corp.*, 384 F. Supp. 2d at 196, 199.

jurisdiction's BAC collective bargaining agreement, even though the employer never signed the agreement with that BAC affiliate"), *with Trs. of the Bricklayers & Allied Craftworkers, Local 5 v. Charles T. Driscoll Masonry Restoration Co.*, 165 F. Supp. 2d 502, 511 (S.D.N.Y. 2001) (holding that, on its face, clause bound employer only to CBA employer in fact signed).[6]

We believe the clause is ambiguous. Indeed, as the Sixth Circuit noted in construing a virtually identical clause, "the first sentence of the BAC Traveling Contractor clause is susceptible to more than one interpretation" because the "phrase 'within the area covered by an agreement with another affiliate of the [BAC]' could refer to an agreement between [the employer] and the BAC affiliate, or it could refer to an agreement between *any* employer and the BAC affiliate." *Trs. of the B.A.C. Local 32 Ins. Fund v. Ohio Ceiling & Partition Co.*, 48 Fed. App'x 188, 195 (6th Cir. Oct. 4, 2002) (emphasis added). Given the ambiguity, we may consider the intent of the parties to interpret the meaning of the August 2002 CBA's traveling contractor's clause. *See*, *e.g.*, *United States v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1042 (D.C. Cir. 1997).

Unlike the statements of the union president in *Driscoll Masonry*—accepting a narrow interpretation of the clause—and those of the company president in *Ohio Ceiling*—with a similar narrow understanding of the clause, *see Ohio Ceiling*, 48 Fed. App'x at 195–96—there is little extrinsic evidence of intent here. A Massachusetts BAC official submitted an affidavit regarding the reason the BAC inserts traveling contractor's

---

[6]The district court in *Driscoll Masonry* also noted that the local union's president agreed with the court's narrow interpretation of the clause. *See Driscoll*, 165 F. Supp. 2d at 511.

clauses into all collective bargaining agreements. *See* Decl. of Ronald Marvin at 4–5, *reprinted in* JA at 287–88. His statement reflects a broad understanding of the clause, binding signatory employers to the CBAs of local BAC affiliates—even if the employer does not sign the local CBA—in order to "prevent . . . employers from operating non-union in foreign jurisdictions." *Id*. at 287.

Moreover, "it would make little sense to interpret the . . . clause as only applying when the employer works in a jurisdiction where *that same employer* has signed a separate CBA with another BAC affiliate because, if the employer was signatory to an agreement in the jobsite area, there would be no need for a traveling contractors clause." *Beeler*, 2004 WL 3712630 at *7 (emphasis in original). Indeed, a narrowly construed traveling contractor's clause would simply reimpose the employer's already existing contractual obligation. Such an interpretation would render the traveling contractor's clause meaningless and, absent evidence of such intent, parties "ought not be presumed to have included in their agreement a meaningless provision." *Martinsville Nylon Employees Council Corp. v. NLRB*, 969 F.2d 1263, 1267 (D.C. Cir. 1992). As a consequence, and absent evidence of any contrary intent, we believe the August 2002 CBA's traveling contractor's clause binds Dick Corporation to a CBA in force at a "foreign" jobsite even if the Company is not a signatory thereto.[7]

_____

[7]Although the interpretation of ambiguous contract language, particularly if it requires consideration of extrinsic evidence, is a question of fact, *cf. Am. First Inv. Corp. v. Goland*, 925 F.2d 1518, 1521–22 (D.C. Cir. 1991) (if contract terms ambiguous "the contract cannot be interpreted as a matter of law and the case must be remanded so that the fact-finder can determine the parties' true

B. *Effect of Section 302 of LMRA*

The Florida CBA at issue requires an employer to contribute pension and retirement benefit payments into the Fund for union work performed within the territorial jurisdiction of the CBA. JA 603. While the LMRA prohibits employer contributions to a labor organization, section 302 provides an exception "with respect to the payment . . . of any money . . . in satisfaction of a judgment of any court or a decision or award of an arbitrator." 29 U.S.C. § 186(c)(2). The IPF asserts that the benefit contributions Dick Corporation owes pursuant to the Florida CBA are lawful under this exception because the Company breached the CBA by hiring non-union subcontractors on its Florida projects. *See* Appellants' Br. at 11; Pls.' Mot. for Summ. J. at 13–14. The Florida CBA provides:

> The Employer agrees that neither he nor any of his subcontractors on the jobsite, will contract or subcontract work coming under the trade or territorial jurisdiction of [the BAC], to be done at the site of construction . . . except to a person, firm or corporation bound to this agreement.

Pls.' Mot. for Summ. J. at 13. Dick Corporation admitted that it employed non-union subcontractors on its Florida projects.

---

intent"), Dick Corporation submitted no counter-affidavit challenging the Fund's affidavits as required on summary judgment, *see* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported [by affidavits], an adverse party[,] . . . by affidavits . . . , must set forth specific facts showing that there is a genuine issue for trial."). We are therefore able to determine the meaning of the traveling contractor's clause contained in the August 2002 CBA.

*See* Decl. of Raymond Crothers at JA 152.[8]  As a result of the Company's breach, the Fund claims, it is entitled—pursuant to the section 302(c)(2) exception—to the benefit contributions the Company would have been required to pay absent the breach. *See* Appellants' Br. at 16.

In *Washington Post v. Washington-Baltimore Newspaper Guild*, *Local 35*, 787 F.2d 604 (D.C. Cir. 1986), we upheld an arbitrator's award against a LMRA challenge, finding section 302(c)(2) exempted the award from section 302(a)'s general prohibition.  *See id*. at 606–07, 609.  The arbitrator found that The Washington Post breached a collective bargaining agreement by failing to pay union dues from the salaries of columnists—viewing the columnists as not covered by the CBA—and ordered the newspaper to reimburse the union fund for the dues not paid on account of the breach.  *See id*. at 605. On appeal, we concluded that the arbitrator's order came within the section 302(c)(2) exception.  *See id*. at 606–07.

Dick Corporation, however, argues that *Washington Post* and section 302(c)(2) of the LMRA are inapplicable because the IPF has no underlying court judgment or arbitration award establishing the Company's breach of the Florida CBA, *see* Appellee's Br. at 27–29, relying on *Jackson Purchase Rural Elec*. *Coop*. *Ass'n v*. *Local Union 816*, *Int'l Bhd*. *of Elec*. *Workers*, 646 F.2d 264, 268 (6th Cir. 1981).  In that case, the

---

[8]If, contrary to the Company's position, we conclude that it *is* subject to the Florida CBA by virtue of the traveling contractor's clause, the Company does not contest that its conduct breached the Florida CBA.  *See* Appellee's Br. at 27–31 (challenging applicability of section 302(c)(2) exception to damages from breach rather than fact of breach).

court refused to enforce the arbitration award because the only alleged contractual breach—the breach upon which the arbitrator relied—involved an otherwise illegal provision in the collective bargaining agreement. *See id*. at 266, 267–68 (illegal union dues "check-off" provision). The problem in *Jackson Purchase* was not the lack of an underlying judgment; instead, there was no breach of a valid, legally enforceable contractual provision. Indeed, *Washington Post* distinguished *Jackson Purchase* on this ground, recognizing that "[t]he opinion says nothing about an arbitrator's power to award a union the dues it lost as a consequence of the employer's breach of a valid collective bargaining agreement." *Washington Post*, 787 F.2d at 608.

Section 302(c)(2) requires no more than "vigorous and genuine litigation" and the court's (or arbitrator's) determination of the merits of the alleged contractual breach. *Id*. at 607 ("The Post will pay this money on the order of the arbitrator, after vigorous and genuine litigation."). From a practical standpoint, Dick Corporation's claim that an underlying judgment is necessary to invoke section 302(c)(2) would be cumbersome and duplicative, requiring two separate sets of litigation: an initial determination of breach and a second enforcement proceeding. Instead, once the court finds a valid contractual provision breached, the "satisfaction of a judgment" language of section 302(c)(2) is met and the same court may award damages for the violation. *See Trs. of Int'l Bhd. of Teamsters Local 531 Sick & Welfare Fund v. Marangi Bros., Inc.*, 289 F. Supp. 2d 455, 463 (S.D.N.Y. 2003) ("If defendants are found to have breached the CBA, plaintiffs would be entitled to an award of damages because Section 302(c)(2) specifically excludes the application of § 302(a) . . . .") (citing *Washington Post*, 787 F.2d at 607). Here, the IPF alleges, and the Company concedes, that Dick

Corporation breached the Florida CBA by hiring non-union subcontractors. *See* Pls.' Mot. for Summ. J. at 13–14; Decl. of Raymond Crothers at JA 152. The Fund is entitled to damages resulting from the breach in the form of benefit contributions "in a sum equal to that which they would have received if the agreement between the defendant and the union had been fully performed by all parties." *Trs. of the Teamsters Constr. Workers Local 13, Health & Welfare Trust Fund for Colo. v. Hawg N Action, Inc.*, 651 F.2d 1384, 1386–87 (10th Cir. 1981); *see also Chicago Painters & Decorators Pension, Health & Welfare, and Deferred Sav. Plan Trust Funds v. Karr Bros., Inc.*, 755 F.2d 1285, 1290 (7th Cir. 1985) (breaching employer "required . . . to pay . . . the amount that [employer] would have been required to contribute to the trust funds if it had complied with the collective bargaining agreements").[9]

## C. *Effect of Arbitration Clause of Florida CBA*

Next, Dick Corporation argues that the IPF may not bring suit without first complying with the compulsory arbitration provision contained in the Florida CBA. *See* Appellee's Br. at 41. As the Supreme Court has recognized, however, the "presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers." *Schneider Moving & Storage Co. v. Robbins*, 466

---

[9]Although the district court did not rule on the applicability of section 302(c)(2), the IPF raised the issue of Dick Corporation's breach before the district court. *See* Pls.' Mot. for Summ. J. at 13–14. Because contractual breach is a legal question that was raised below and also on appeal, *see* Appellants' Br. at 11–16, we may, exercising *de novo* review, reach the merits of the breach claim.

U.S. 364, 372 (1984). Thus, "in the absence of an unambiguous expression by the parties to the contrary, pension funds are not required to exhaust collective bargaining agreement arbitration procedures prior to filing an action for collection of delinquent contributions to the pension fund." *Flynn v. Interior Finishes, Inc.*, 425 F. Supp. 2d 38, 48 n.11 (D.D.C. 2006).

As both third-party beneficiaries of the Florida CBA's trust fund provisions and trustees of an employee-benefit fund, the IPF is entitled to file suit for delinquent contributions free from the CBA's arbitration requirements. *See*, *e.g.*, *Schneider*, 466 U.S. at 370–72 (finding compulsory arbitration inapplicable where third-party beneficiaries invoking CBA provisions are trustees of employee-benefit funds); *Robbins v. Lynch*, 836 F.2d 330, 333 (7th Cir. 1988) ("A pension or welfare trust is a third-party beneficiary of the collective bargaining agreement."). To the extent that Dick Corporation relies on *Interior Finishes* to argue that the Fund is barred from filing suit absent exhaustion because the trustees " 'are standing in the shoes of the union,' "Appellee's Br. at 41 (quoting *Interior Finishes*, 425 F. Supp. 2d at 49), the Company misapprehends the holding. The defendant employer in *Interior Finishes* did "not challenge the [Fund's] ability to seek, *on its own behalf*, unpaid contributions to the Fund without exhausting . . . arbitral remedies." *Interior Finishes*, 425 F. Supp. 2d at 48 (emphasis in original). Indeed, given the Supreme Court's holding in *Schneider*, that argument could not have prevailed. *See id.* at 48 n.11 (quoting *Schneider*, 466 U.S. at 372). Instead, in *Interior Finishes* the defendant employer challenged the Fund's ability to bring suit on behalf of *the BAC* without first arbitrating such claims. *Id.* at 49. Because union claims are not protected under *Schneider*, *see* 466 U.S. at 372, the district court in *Interior Finishes* dismissed the claims made on behalf of the BAC for failure to exhaust arbitral

remedies, 425 F. Supp. 2d at 50, but allowed the suit to continue with regard to the claims made on behalf of the Fund itself, *see id*. at 49–50.

In this case, the Fund brought suit on its own behalf to collect unpaid contributions, *see* Appellants' Br. at 3 & n.2, and the district court properly rejected Dick Corporation's exhaustion defense, *see Dick Corp*., 384 F. Supp. 2d at 202. On the other hand, to the extent the IPF sued to recover union dues, those claims are outside *Schneider*'s holding and must be dismissed.

D. *Existence of Enforceable Florida CBA*

Finally, Dick Corporation challenges the district court's determination that there is a genuine issue of material fact—precluding summary judgment—whether an enforceable Florida CBA existed at the time of its Florida construction projects. The Company asserts that the district court erred in relying on proffered evidence related to the Florida CBA in light of the Fund's alleged discovery violations. *See* Appellee's Br. at 14–26. Indeed, when the Company requested a copy of the Florida CBA, including the CBA's specific wage and contribution rates, during discovery, *see* JA 267, the Fund produced only a standard Florida CBA form (with blanks not filled in), JA 267–68; 129–50, and Dick Corporation claims that the Fund failed to provide the specific information needed to establish the existence of an enforceable CBA until the Company moved for summary judgment, *see* Appellee's Br. at 16. Because of the Fund's failure to produce, the Company argues, the district court should have excluded any rate

information under Federal Rule of Civil Procedure 37(c)(1).[10] Instead the district court erroneously relied on the evidence and thus, Dick Corporation asserts, erroneously found an enforceable Florida CBA. Absent an enforceable contract, the Company continues, the Fund's contribution arguments fail for lack of an obligation. *See* Appellee's Br. at 14–18.[11]

In response, the Fund claims that it provided the "substantial justification" for non-disclosure necessary to avoid Rule 37(c)(1). *See* Appellants' Reply Br. at 20–21 n.27; Pls.' Sur-Reply to Def.'s Reply Br. in Supp. of Mot. for Summ. J. First, the Fund argues that it did supply the requested wage and contribution rates during discovery, thereby providing the information needed to establish an enforceable CBA. *See* Appellants' Reply Br. at 21 n.27; Decl. of Seth Richardson, *reprinted in* JA at 525. Second, the Fund showed that some of the requested information was within the control of a Florida BAC official. *See* Decl. of Robert Blanco at 1–2, *reprinted in* JA at 474–75 (describing Florida BAC official's providing Florida CBA to Fund). Finally, before the district court, the Fund explained "that the *only* reason why the documents at issue were not gathered and produced earlier . . . was because Dick Corporation chose to wait until its summary judgment motion to argue *for the very first time* that the Florida [CBA] was illegal and unenforceable because it did not contain the governing

---

[10]Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), . . . is not, unless such failure is harmless, permitted to use as evidence . . . on a motion any . . . information not so disclosed."

[11]Absent an enforceable agreement, no contractual breach exists to trigger section 302(c)(2)'s exception.

rates." Pls.' Sur-Reply to Def.'s Reply Br. in Supp. of Summ. J. at 2 (emphasis in original).

In general, the district court enjoys wide discretion in managing discovery, and, accordingly, "[w]e review the district court's discovery ruling[s] for abuse of discretion" only. *See Diamond Ventures*, *LLC v*. *Barreto*, 452 F.3d 892, 898 (D.C. Cir. 2006). This deference extends to the district court's imposition of discovery sanctions. *See Jankins v*. *TDC Mgmt*. *Corp*., 21 F.3d 436, 445 (D.C. Cir. 1994); *see also* Fed. R. Civ. P. 37(c)(1) ("In addition to or in lieu of [exclusion of evidence], the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions."). Here, the district court used the challenged evidence to revise its summary judgment order in response to the Fund's Rule 59(e) reconsideration motion. *See* JA 664–65. We also review a district court's decision to alter or amend a judgment under Rule 59(e) for abuse of discretion. *See Messina*, 439 F.3d at 758–59.

Both Dick Corporation and the Fund presented arguments to the district court regarding discovery sanctions. Nevertheless, the district court did not expressly decide the discovery dispute. Instead, it simply used the challenged evidence in deciding on reconsideration "that the Court erred when it found that evidence of the detailed wage scales and contribution rates necessary to complete the contract had not been submitted into the record." JA 665 (citing Decl. of Robert Blanco at JA 474–82). The district court therefore found that the existence of an enforceable CBA in effect at the time of Dick Corporation's

Florida projects "presented a genuine issue of disputed material fact sufficient to withstand summary judgment." *Id*.[12]

---

[12]Despite the wage scale and contribution evidence, the district court on reconsideration remained "unable to find on the basis of the existing evidence that the Florida agreement was in fact 'in effect' in the local jobsites." Mem. Order on Mot. for Recons. at JA 665. In its summary judgment order, the district court had "relied both on the lack of any signed agreement in the record and on the apparent lack of any evidence that the necessary . . . wage scales [and] contribution rates . . . had been agreed to and incorporated into the template CBA for any Florida jurisdiction." *Id*. at 664 (footnote omitted). Because its Rule 59(e) ruling was based on the record evidence regarding wage scales and contribution rates, the only remaining basis for its summary judgment grant was the lack of the parties' signatures. While the document provided by the Florida BAC affiliate did not contain signatures, it referenced the Union Contractors and Subcontractors Association as the employer party to the agreement. *See* JA 512, 514 (citing "[t]he attached 'Industrial Agreement' between BRICKLAYERS AND ALLIED CRAFTSMEN, LOCAL #1, FLORIDA, UNION CONTRACTORS, AND SUBCONTRACTORS ASSOCIATION, INC."). Further, Robert Blanco, the President of the Florida BAC, stated that the wage and contribution rates in the submitted material represented the "Memoranda of Agreement" between the local BAC and employer groups when Dick Corporation's Florida projects were in progress. *See* Decl. of Robert Blanco at JA 476–79. Thus, the material the Fund submitted as well as Blanco's declaration identified the parties to the contested Florida CBA. *Cf. Henke v. U.S. Dep't of Commerce*, 83 F.3d 1445, 1450 (D.C. Cir. 1996) ("A contract has certain essential elements, to wit, competent parties, lawful subject matter, legal consideration, mutuality of assent and mutuality of obligation."). Given this evidence regarding the parties' signatures, on remand the district court should revisit whether the Florida CBA was in effect at the Company's Florida jobsites.

Moreover, the district court did not "deliberate[ly]" reject the proffered evidence in its initial summary judgment ruling as a discovery sanction but simply overlooked the evidence "[a]wash in [the] sea of unsigned and unlabeled agreements and contracts" in the case. *Id*. at 665 n.4. While we owe deference to the district court's discovery decisions, we cannot defer to a decision that has not been made and we therefore remand for the district court to exercise its discretion in deciding the Rule 37(c)(1) matter. *See EEOC v. Nat'l Children's Ctr., Inc*., 98 F.3d 1406, 1410–11 (D.C. Cir. 1996) (remanding for district court to exercise discretion by "mak[ing] a finding as to whether 'good cause' exist[ed] for restricting the use of the depositions in this case").

To sum up, we reverse the district court's holding that the benefit contributions sought by the Fund are prohibited under the LMRA because Dick Corporation's breach of the Florida CBA—to which the Company is bound by operation of the August 2002 CBA's traveling contractor's clause—brings the requested benefit contributions within the exception of section 302(c)(2) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(2). While we agree with the district court that the Fund's claims are not subject to the Florida CBA's arbitration requirement, to the extent the Fund's suit seeks to recover on behalf of the BAC as well, such claim is subject to compulsory arbitration and therefore must be dismissed. We remand to the district court its Rule 59(e) ruling—finding evidence of an enforceable Florida CBA—to consider the Company's outstanding Rule 37(c)(1) motion. Finally, we remand for further proceedings consistent with this opinion the issues of the applicability of the Florida collective bargaining agreement at

the Company's Florida jobsites and the appropriate award of damages.

*So ordered.*